# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

LENORA SMILEY WELCH,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: 5:16-cv-11

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Morton J. Gold, Jr. ("the ALJ" or "ALJ Gold") denying her claim for supplemental security income benefits. Plaintiff urges the Court to reverse the ALJ's decision and remand this case for a proper determination of the evidence. Defendant asserts that the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision.

## BACKGROUND

Plaintiff protectively filed an application for supplemental security income benefits on July 25, 2011, alleging disability beginning on February 15, 2001. (Doc. 12-6, p. 3.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On February 12, 2014, ALJ Gold conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified in Waycross, Georgia, while the ALJ presided in Savannah, Georgia. (Doc. 12-2, p. 20.) James Waddington, a vocational expert, also appeared at the hearing. (Id.) ALJ Gold found that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* ("the Act"). 42 U.S.C. §§ 423 & 416(i). The

Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Doc. 12-2, p. 2.)

Plaintiff, born on March 10, 1960, was fifty-four (54) years old when ALJ Gold issued his final decision. She has a high school education. (Doc. 12-3, p. 2.) Plaintiff has no past relevant work experience. (Id. at p. 17.)

## DISCUSSION

### I.     The ALJ's Findings

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments under the "severity regulation." 20 C.F.R. §§ 404.1520(c) & 416.920(c); Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is considered severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step. At step four, a determination

2

is made as to whether the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since the date of her application for supplemental security income benefits, through the date of ALJ Gold's decision on April 18, 2014. (Doc. 12-2, p. 22.) At step two, the ALJ determined that Plaintiff has degenerative disc disease at C5-6, mild levoscoliosis of the lumbosacral spine exacerbated by obesity, bilateral carpal tunnel syndrome, and bipolar disorder, conditions considered "severe" under 20 C.F.R. 404.1521. (Id.) However, at step three, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment under the Regulations. (Id. at p. 25.) The ALJ found that Plaintiff had the residual functional capacity, through the date of his decision, to perform light work as defined in 20 CFR 416.967(b), except she can individually grip and finger objects for no more than two-thirds of an eight hour day, cannot grip or finger objects repetitively, should avoid concentrated exposure to irritants/pollutants and vibrations, should limit the performance of work activities with a specific vocational preparation of 1 to 3, and

should limit social interaction with the public, supervisors, and coworkers to no more than one-third of an eight hour workday. (Id. at p. 26) ALJ Gold further found that Plaintiff is better off working with objects rather than people. (Id.) At the next step, the ALJ noted Plaintiff has no past relevant work experience. (Id. at p. 33.) At the final step, the ALJ concluded jobs exist in significant numbers in the national economy that Plaintiff can perform, considering Plaintiff's age, education, and residual functional capacity. (Id. at p. 35.) Specifically, based upon testimony from the vocational expert, the ALJ determined that Plaintiff is capable of performing work as a bagger, mail clerk or watch person.

## II.  Issues Presented

Plaintiff contends that the ALJ erroneously determined that jobs exist in significant numbers in the national economy that Plaintiff is capable of performing. Specifically, Plaintiff avers the ALJ did not properly consider what effect Plaintiff's (1) intermittent disruption of concentration; (2) disruption of pace once or twice per week; and (3) limitations with the public, supervisors, and co-workers for no more than one-third of an eight-hour work day has on the precise number of bagger, mail clerk, and watch person jobs in the national economy available to her. (Doc. 15, pp. 5–6.) Plaintiff also contends the ALJ erred by concluding that jobs exist in significant numbers in the national economy without first subtracting the number of bagger jobs requiring Plaintiff to grip and finger objects for more than two-thirds of an eight hour work day. (Id.)

## III.  Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936

F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

**IV.    Whether Jobs Exist in Significant Numbers in the National Economy**

Plaintiff asserts that the ALJ erred by determining, at step five, that there exists a significant number of jobs in the national economy that Plaintiff can perform. Specifically, Plaintiff asserts that ALJ Gold failed to determine whether Plaintiff's (1) intermittent disruption of concentration; (2) disruption of pace once or twice per week; and (3) limitations with the public, supervisors, and co-workers for no more than one-third of an eight-hour work day would erode her light occupational work base, and if so, to what degree. (Doc. 15, p. 4.) Similarly, Plaintiff argues that the ALJ ignored the vocational expert's opinion that Plaintiff's inability to grip and finger objects for more than two-thirds of an eight-hour work day decreases the total number of available bagger jobs and, therefore, reduces the number of jobs existing in significant

5

numbers in the national economy. (Id.) Accordingly, Plaintiff contends that the Court should remand her case for a proper determination of the evidence. (Id. at pp. 6–7.)

Defendant responds that substantial evidence supports the ALJ's determination that jobs exist in significant numbers in the national economy that Plaintiff is capable of performing. (Id. at p. 7.) First, Defendant argues that the vocational expert's opinion took into account Plaintiff's (1) intermittent disruption of concentration; (2) disruption of pace once or twice per week; and (3) limitations with the public, supervisors, and co-workers, because the ALJ included those limitations to Plaintiff's RFC in his hypothetical to the vocational expert. Accordingly, Defendant maintains that the ALJ did not err by failing to inquire whether those particular limitations would decrease the total number of jobs within each category of jobs available to Plaintiff. Second, Defendant argues that, even if fewer bagger positions are available to Plaintiff due to her inability to grip and finger objects for more than two-thirds of an eight-hour work day, a significant number of mail clerk and watch person jobs still exist in the national economy. (Id. at p. 7.) Therefore, Defendant maintains that the ALJ's determination is supported by substantial evidence, notwithstanding Plaintiff's contentions.

To support a finding that the claimant is able to perform work existing in significant numbers in the national economy, the ALJ must: (1) consider all the duties of that work, and (2) evaluate the claimant's ability to perform them in spite of her impairments. Klawinski v. Comm'r of Soc. Sec., 391 F. App'x 772, 775 (11th Cir. 2010) (citing Lucas v. Sullivan, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990)). A claimant seeking disability benefits bears the burden of proving that she cannot perform work as it is generally performed in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1560(b)(3). When evaluating whether a claimant can perform a particular job, the ALJ must "consider whether the claimant can perform the functional demands

and duties of the occupation as generally required by employers throughout the national economy." Scharber v. Comm'r of Soc. Sec., 411 F. App'x 281, 282 (11th Cir. 2011) (citing SSR 82–61, 1982 WL 31387 (1982)).

The burden is on the ALJ to provide evidence about the existence of other work in the national economy that a claimant can perform. Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984). The ALJ may satisfy this burden and provide this evidence through the testimony of a vocational expert. Phillips, 357 F.3d at 1240. "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." Waldrop v. Comm'r of Soc. Sec., 379 F. App'x 948, 952 (11th Cir. 2010) (citing Phillips, 357 F.3d at 1240)). In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. Phillips, 357 F.3d at 1240 n.7. Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a). Once the ALJ has articulated specific jobs that exist in the national economy that a claimant can perform, the claimant must show that she could not perform those jobs in order to prove disability. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

During the hearing, the ALJ posed the following hypothetical to the vocational expert:

> In our first hypothetical, we have an individual with degenerative disc disease of the cervical spine, from C5-6; mild scoliosis of the lumbosacral spine, exacerbated by being a bit overweight, and bilateral carpal tunnel syndrome that would limit her to performing light exertional work activities and never require her to climb ladders, ropes, or scaffold.
> She can individually sit, stand, walk, push, and/or pull for at least six of eight hours in an eight-hour work day. She can lift/carry 20 pounds occasionally defined as up to a third of an eight-hour work day–and 10 pounds frequently– defined as up to two-thirds of an eight-hour work day. <u>She can individually grip and finger objects for no more than two-thirds of an eight-hour work day</u>. When she is performing these activities, they should not be repetitive so that they would exacerbate her carpal tunnel syndrome. She should avoid concentrated exposure

7

to environmental irritants or pollutants that might exacerbate a ventilator defect that she has. She should avoid concentrated exposure to vibrations that might exacerbate her musculoskeletal problems.

As a result of her bipolar disorder, she's going to be limited to performing work activities with an SVP of 1 to 3. <u>While her concentration may be intermittently disrupted for up to a third of an eight-hour work day</u>, if the work is in the upper limits of semi-skilled or even skilled work, she can pay enough attention to details to meet the general productivity requirements of a job or jobs within the same work day. If the work she is performing is simple, repetitive, routine, or even more. <u>Even though her pace might be disrupted once or twice a week</u>, she'll still be able to perform assigned tasks by the end of the same work day.

<u>Social interaction with the public, supervisors, and coworkers should be limited to no more than one-third of an eight-hour work day</u>, although she can work in close proximity with them throughout the entire work day. She's better off working with objects rather than people.

Given the parameters of that hypothetical, sir, would there be any competitive employment an individual could perform on a regular and sustained basis, or as that can that individual work eight hours a day, forty hours a work week for at least a minimum of six to nine months?

(Doc. 12-2, pp 106–107.) (emphasis supplied). ALJ Gold thoroughly outlined Plaintiff's limitations in his hypothetical to the vocational expert. The vocational expert then incorporated those limitations into his opinion that Plaintiff could perform the jobs of bagger, mail clerk, and watch person. (Id.) The vocational expert further opined that 140,000 mail clerk jobs exist nationally and 5,500 exist in the state of Georgia; 160,000 night watch person jobs exist nationally and 7,200 exist in the state of Georgia; and 70,000 bagger jobs exist nationally and 3,300 exist in the state of Georgia. (Id.)

The ALJ based his conclusion that jobs exist in significant numbers in the national economy on the vocational expert's testimony that Plaintiff is capable of performing hundreds of thousands of existing jobs. Accordingly, the ALJ's determination is supported by substantial evidence. Furthermore, "[t]he ALJ, relying on the [vocational expert's] testimony, and not the [vocational expert], determines whether a specific number of jobs constitutes a significant number." Brooks v. Barnhart, 133 F. App'x 669, 670 (11th Cir. 2005) (citing 20 C.F.R. §

8

404.1512(g), and Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986) (whether there are a significant number of jobs is a question of fact to be determined by a judicial officer)). As discussed above, this Court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer, 395 F.3d at 1210. Consequently, Plaintiff's argument that the ALJ should have pinpointed a narrower number of jobs available to Plaintiff within each job category identified by the vocational expert is without merit. See Bailey v. Astrue, 739 F. Supp. 2d 1365, 1382 (N.D. Ga. 2010) ("that the ALJ only identified one occupation is not fatal to the ALJ's decision because the regulations specifically contemplate that a significant number of jobs can be found even if the plaintiff can only perform one occupation"); see also Brooks, 133 F. App'x at 671 (finding that 840 polisher, document preparer, and bonder jobs constituted a significant number in the national economy). The ALJ did all that was required of him, and his decision is supported by substantial evidence. Particularly given the standard of review at this stage, Plaintiff's enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of March, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA